2011 Ark. App. 588

**Christopher MURRAY, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.**

**No. CA 11–455.**

Court of Appeals of Arkansas.

Oct. 5, 2011.

Deborah Ruth Sallings, Little Rock, for appellant.

Melissa Bristow Richardson, Jonesboro, Tabitha Baertels McNulty, Little Rock, for appellees.

ROBIN F. WYNNE, Judge.

Christopher Murray appeals from the circuit court's order terminating his parental rights to his three children, Y.M. (born May 31, 2001), L.M. (born August 11, 2002), and P.M. (born February 19, 2005).[1] Appellant argues in his brief that there was insufficient evidence presented at the termination hearing to support the circuit court's findings. We affirm the decision of the circuit court.

On May 29, 2009, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect of Y.M., L.M., and P.M. In the affidavit that was attached to the petition, Monica Isenhower, an employee with the Washington County Department of Children and Family Services, states that DHS received a maltreatment report on May 26, 2009, alleging that P.M. was sexually acting out on L.M. Isenhower interviewed the children, who disclosed that appellant was touching them on private parts of their bodies when their stepmother, Angel Murray, was not in the home. A protective hold was then taken on the children. The circuit court found probable cause to grant DHS's petition.

On July 8, 2009, the circuit court adjudicated the children dependent-neglected based upon the report that they were sexually acting out on each other. In the adjudication order, the court states that appellant has served time in prison for molestation and is a registered sex offender. The court ordered appellant to, among other things, participate in individual counseling, maintain stable housing and employment, demonstrate the ability to protect the children and keep them safe from harm, and obtain a sexual-offender assessment. The children were placed in the custody of an aunt, Donna Smith. Appellant was granted supervised visitation. The goal of the case was set as reunification with appellant. Following a review hearing held on November 18, 2009, the circuit court found that appellant partially complied with the case plan but that he had an unstable relationship with the children's stepmother.

A permanency-planning hearing was held on March 17, 2010. Following that hearing, the court found that appellant partially complied with the case plan but had not participated in individual therapy, and his personal life continued to be unstable. The court changed the goal of the case for both parents to termination. A termination hearing was held on July 6, 2010, after which the court granted the termination petition with respect to the children's mother but denied it with respect to appellant. The goal of the case was changed back to reunification with appellant. The children were also placed back into the custody of DHS after Donna Smith testified that she could no longer care for them.

After a review hearing on September 15, 2010, appellant was granted overnight visitation with the children with Angel Murray ordered to be present during all visits. After the overnight visits began, the children's foster parents reported that P.M. was talking and screaming in her sleep, wetting the bed, and drawing inappropriate pictures of people that included male and female genitalia. Scarlet Travis, an advanced practical nurse at the University of Arkansas for Medical Sciences (UAMS), wrote a letter in which she stated that Y.M. disclosed to her specific details of appellant touching her inappropriately.

---

1. The children's mother is not a party to this appeal.

Nurse Travis also repeated the concerns regarding P.M. and suggested that the children's visitation with appellant be supervised. On November 22, 2010, the circuit court entered an order changing appellant's visitation to supervised visits. Another permanency-planning hearing was held on December 15, 2010. In the resulting order, the circuit court found that appellant continued to be unstable in his relationships and had not maintained stable housing. The goal of the case was changed to adoption.

DHS filed a petition to terminate appellant's parental rights on December 16, 2010. At the termination hearing, Steve Hodge testified that he had been the caseworker assigned to the case since it opened twenty months before. During that time, the children had not been returned to appellant's home. He testified that appellant had moved at least five times since the case opened. Hodge stated his belief that appellant had not demonstrated the ability to protect his children based on his opinion that the sexual-abuse allegations had not been addressed in counseling and appellant had never taken responsibility for the allegations. Hodge stated that appellant's housing and relationship with his wife were unstable. According to Hodge, appellant broke up with his wife at least three times during the case. Hodge was of the belief that any contact with appellant would be harmful to the children. Hodge also gave the opinion that appellant's inability to maintain a stable relationship with Angel Murray was mentally harmful to the children. Y.M. told Hodge that she would be afraid to visit appellant without someone supervising the visits. Hodge testified that the children were highly adoptable. The adoption specialist told Hodge that she should be able to find a suitable adoptive home for the children fairly quickly.

Appellant testified that he had moved three or four times during the case and that he had lived at his current address for two months. He denied sexually abusing his children. Appellant stated that his mother coached the children to make the allegations. Appellant admitted that he was convicted for sexual abuse of a fourteen-year-old girl he dated when he was eighteen. He also stated that he had not been going to counseling because he did not have time off from work. Appellant denied that his divorce from Angel was going to affect his ability to care for his children. Appellant's father indicated to appellant that he would be able to help with the children, as did appellant's brother, sister, and uncles. Chris Tefner, the children's foster father since August 2010, testified that the children got "rowdy" after visiting with appellant. He also stated that P.M.'s nightmares stopped after the unsupervised visits with appellant had ended.

On February 15, 2011, the circuit court entered an order granting DHS's petition to terminate appellant's parental rights. In the order, the court states that its decision is based on a finding by clear and convincing evidence that it is in the children's best interests to terminate appellant's rights, including consideration of the likelihood that the children will be adopted if the petition is granted and the potential harm caused by continuing contact with appellant. In addition, the court found that DHS proved the following grounds alleged in the termination petition: (1) that the children had been adjudicated dependent-neglected and had continued out of the custody of appellant for twelve months and, despite a meaningful effort by DHS to rehabilitate appellant and correct the conditions that caused the removal, those conditions had not been remedied; (2) that other factors or issues arose subsequent to the filing of the origi-

nal petition for dependency-neglect that demonstrated that return of the children to the custody of appellant was contrary to the children's health, safety, or welfare and that, despite the offer of appropriate family services, appellant had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate his circumstances that prevent return of the children to his custody. Appellant has now appealed to this court.

■ An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark.Code Ann. § 9–27–341(b)(3)(A) (Repl.2009). Additionally, DHS must prove at least one statutory ground for termination by clear and convincing evidence. Ark.Code Ann. § 9–27–341(b)(3)(B) (Repl.2009). We do not reverse a termination order unless the circuit court's findings were clearly erroneous. *Meriweather v. Ark. Dep't of Health & Human Servs.,* 98 Ark. App. 328, 255 S.W.3d 505 (2007).

■ Appellant's first argument on appeal is that there was insufficient evidence to establish either of the grounds for termination by clear and convincing evidence. Appellant argues that there was no evidence to prove that he failed to remedy the conditions causing the removal. Specifically, he states that the children were removed due to allegations that he sexually abused them and that he could not have remedied that condition because he did not commit the abuse. Although the circuit court never found by clear and convincing evidence that appellant sexually abused the children, the court did find that the children were subjected to abuse while in his custody, as evidenced by their statements and the sexual behavior that prompted the investigation by DHS. The children were removed due to the threat of harm from sexual abuse in the home. Over

a year into the case, appellant was offered weekly unsupervised overnight visitation for the first time and the visits were suspended after only two months because the children, especially P.M., were exhibiting signs of harm from being in appellant's home. It was not necessary for the circuit court to find that appellant himself committed any abuse. It *was* necessary for the circuit court to find that the conditions that caused the children to be removed remained, and, given the evidence presented at the termination hearing, we hold that the circuit court's finding that DHS proved by clear and convincing evidence that those conditions still existed is not clearly erroneous.

Appellant attempts to liken this case to *K.C. v. Arkansas Department of Human Services,* 2010 Ark. App. 353, 374 S.W.3d 884, in which this court found that the same ground for termination was not proven because K.C., who was a minor mother removed along with her infant from her mother's home, was not responsible for the conditions that caused the removal. Our holding in that case is not applicable to the case at bar because in *K.C.* it was never alleged that the minor mother was responsible for the conditions that led to her child's removal from her mother's home. In this case, although appellant denies the allegations, the children were removed due to allegations of abuse by appellant.

■ Appellant also argues that there was insufficient evidence that factors arose subsequent to the filing of the original petition that made it contrary to the children's welfare to return to his custody and which he failed to remedy. Appellant's argument is focused on his contentions that he did not abuse his children and that his mother manipulated the children into making the allegations. However, the evidence presented at the termination hearing, including the letter from the UAMS

nurse, which was admitted without objection, shows that Y.M. disclosed inappropriate touching after the overnight visits with appellant started and that P.M. developed night terrors and enuresis that began when the visits did and stopped when the visits ceased.

In addition, the evidence supports the circuit court's determination that appellant's home life was unstable. There was evidence that the children were bonded to Angel Murray. Although appellant is unfortunately correct in his assertion that divorce is not uncommon, it was the on-again, off-again nature of appellant's relationship with Angel during the life of this case, coupled with the resulting changes in appellant's living situation, that resulted in a failure to provide the necessary stability for the children. The stability of another adult in the home is especially important in this case, given the allegations against appellant and the evidence of what occurred during the overnight visitations. The problems during the overnight visitations and the upheaval in appellant's relationships constitute factors that arose after the original petition that make it contrary to the children's welfare to return to appellant. The evidence in the record demonstrates that these subsequent factors were not resolved. The circuit court's finding that DHS proved this ground for termination by clear and convincing evidence is not clearly erroneous.

■ Appellant's next argument is that there was insufficient evidence to establish that termination was in the children's best interest because there was insufficient evidence to support the finding that the children were adoptable. Appellant's argument is without merit. This court has stated that adoptability is a factor that must be considered, not one that must be proved by clear and convincing evidence. *Renfro v. Ark. Dep't of Human Servs.*,

2011 Ark. App. 419, 385 S.W.3d 285. As appellant admits, the caseworker testified that these children were adoptable. In addition, the caseworker testified that he discussed the children with the adoption specialist, who indicated that she would be able to find an adoptive placement for the children. Appellant attempts to liken the evidence in this case to that in *Grant v. Arkansas Department of Human Services*, 2010 Ark. App. 636, 378 S.W.3d 227, in which this court rejected as evidence of adoptability a statement by an adoption specialist that all children are adoptable. The testimony from Steve Hodge at the termination hearing was that *these* children were adoptable according both to him and to the adoption specialist. Thus, there was evidence of adoptability in the record for the circuit court to consider in determining the children's best interests.

■ Appellant's final argument is that there was insufficient evidence that the children faced potential harm if they were returned to appellant. This argument is likewise without merit. After appellant was allowed unsupervised overnight visits with the children, one of the children made new allegations of inappropriate touching and another developed nightmares and other issues that resolved when the visits stopped. Thus, there was evidence to support the circuit court's finding that the children would suffer potential harm if they were returned to appellant's custody. The circuit court's finding that termination of appellant's parental rights was in the children's best interests is not clearly erroneous.

Affirmed.

GLADWIN and GRUBER, JJ., agree.